**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**THERESA MARIE SMITH,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　**Case No.  6:13-cv-52-Orl-18DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## I.     BACKGROUND

### A.     Procedural History

Plaintiff filed for a period of disability, and disability insurance benefits[1] and SSI benefits on November 9, 2009, alleging an onset of disability on July 16, 2009, due to due to diabetes, degenerative discs in her back, high blood pressure, and arthritis.  R. 144-48, 203, 206.  Plaintiff's

---

[1] Plaintiff's date of last insured is December 31, 2013.  R. 19.

application for Supplemental Security Income was denied for excessive income on November 16, 2009; she was receiving unemployment at the time she applied. R. 83-90, 142. Plaintiff's Disability Insurance Benefits application was denied initially on December 18, 2009 and on reconsideration on March 31, 2010. R.91-98. Plaintiff requested a hearing, which was held on May 25, 2011, before Administrative Law Judge Douglas Walker (hereinafter referred to as "ALJ"). R. 33-54. In a decision dated June 15, 2011, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 14-32. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on November 5, 2012. R. 1-3. Plaintiff filed this action for judicial review on January 9, 2013. Doc. 1.

### B. Medical History and Findings Summary

Plaintiff was 46 years old at the time of the ALJ's decision. R. 25, 144. Plaintiff had a high school education and had worked in the past as a bank teller, retail manager, and loan administrator. R. 50-51, 164, 187. Plaintiff had a steady and consistent work record, earning approximately $25,000 to $30,000 annually (indexed for inflation) from 1992 through 2009. R. 149-50.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of diabetes, degenerative discs in her back, high blood pressure, bronchial problems, arthritis, and swelling and numbness in her right foot. R. 144, 177, 206. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from diabetes, a back disorder, obesity, and chronic obstructive pulmonary disease, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 19. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform the full range of sedentary work with certain exertional limitations. R. 19-24. Based upon Plaintiff's RFC, the ALJ determined that she could not perform her past relevant work. R. 24. Considering Plaintiff's age,

education, vocational profile and RFC, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a charge account clerk, document preparer, and food and beverage order clerk. R. 24-25. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 25.

Plaintiff now asserts two points of error. First, she argues that the ALJ erred by finding she had the RFC to perform sedentary[2] work contrary to her treating physician's statement. Second, Plaintiff contends the ALJ erred by relying on the VE's testimony based on an inaccurate hypothetical that did not include all of Plaintiff's limitations. For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.

---

[2]Plaintiff argues that the ALJ erred in finding she could perform "light" work (Doc. 19 at 3), however, the ALJ found she could perform sedentary work. R. 19. This appears to be a typographical error by Plaintiff.

2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   RFC and the treating physician's opinion

Plaintiff argues that the ALJ should not have found her able to perform the full range of sedentary work when her treating physician opined she had limitations precluding the performance of sedentary work and other medical evidence supported that opinion. The Commissioner argues that the ALJ's decision was based on substantial evidence.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The ALJ made the following residual functional capacity determination:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). The claimant is capable of frequent lifting of 10 pounds, stand/walk for 2 hours in an 8 hour workday and sit for 6 hours in an 8 hour workday. The claimant should avoid frequent ascending and descending stairs and should avoid pushing and pulling motions with her lower extremities. The claimant should also avoid moving machinery, heights, ramps, ladders, scaffolds, and unprotected areas of holes and pits. The claimant should further avoid climbing, balancing, stooping, crouching, kneeling and crawling.

R. 19-20. Based on the residual functional capacity that the ALJ determined, he concluded that Plaintiff was not capable of performing her past relevant work. R. 24. The ALJ then utilized the opinion of a vocational expert to determine that there was other work in the economy that Plaintiff could perform and thus, Plaintiff was not disabled. R. 25.

Plaintiff argues that she suffers from peripheral neuropathy as a complication of her diabetes, but the ALJ erred by failing to specifically find that she had such a condition and account for it in the RFC. She points to medical records which repeatedly noted she was suffering from neuropathy in her extremities (R. 712-13, 786, 768), and argues that the ALJ failed to discuss any of the relevant treatment notes regarding peripheral neuropathy or specifically a diabetic neuropathic condition in her feet, Charcot foot, in violation of the Eleventh Circuit's holding in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011). In *Winschel,* the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986)).

The Commissioner argues that the ALJ properly considered Plaintiff's neuropathy conditions and specifically noted Plaintiff's testimony about her medical problems including her diabetic neuropathy (R. 20) and Plaintiff's treatment records noting she was seen for pain and swelling in her extremities (R. 21-22). The Commissioner contends that Plaintiff's citation to *Winschel* is distinguishable as in that case, the Eleventh Circuit found the ALJ did not discuss pertinent elements of an examining source's opinion and his conclusion suggested it was not considered at all. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). In contrast to this case, the Commissioner argues, the ALJ did discuss the pertinent elements about which Plaintiff complains (including neuropathy) in that he noted Plaintiff's treatment for complaints of extremity pain and "swelling" and he listed the treatment notes in the medical records that Plaintiff has highlighted regarding her neuropathy (R. 21-22), discussing the same pages in the Record that Plaintiff cited in

her brief (R. 712-13, 768, 786). The Commissioner argues that the ALJ's decision does not have to quote every diagnosis and finding contained in the record, the ALJ's discussion of Plaintiff's complaints of neuropathy and the treatment notes referencing complaints of "pain and swelling" in her extremities from diabetes suffice to show such conditions were properly considered, thus, *Winschel* is inapposite. Doc. 20 at 4. These arguments misapprehend the tenor and substance of the ALJ's analysis.

Plaintiff also contends that the ALJ erred in failing to adequately weigh and consider the opinion of Plaintiff's treating physician, Dr. Lawus-Scurry. Dr. Lawus-Scurry opined regarding Plaintiff's RFC on May 24, 2011 that Plaintiff could sit for one hour in an eight-hour workday; stand for one hour in an eight-hour workday; occasionally lift up to five pounds; could not use her right or left hand for fine manipulation; could not use her legs/feet for repetitive work; and would require complete freedom to rest throughout the day, and that these limitations had been present since July of 2009. R. 799-800. Such restriction would preclude any full-time work.

The ALJ discounted Dr. Lawus-Scurry's opinion, giving it "little weight":

> On October 23, 2010, Dr. Lawus-Scurry stated that the claimant's headaches were resolving because she was taking her insulin at night and was compliant with her blood pressure medication; On February 28, 2011, Dr. Lawus-Scurry noted that the claimant's blood pressure readings were better. On March 14, 2011, Dr. Lawus-Scurry stated that the claimant's blood pressure was well controlled with medication and that she was feeling better; and on April 12, 2011, the doctor noted that the claimant's blood pressure was under excellent control and her swelling in her lower extremities was minimal.

R. 23. Plaintiff argues that the ALJ's reasons for discounting the opinion of Dr. Lawus-Scurry are not sufficient because they focus almost entirely on Plaintiff's blood pressure issues, yet Dr. Lawus-Scurry treated Plaintiff over a long period of time for several medical conditions, not merely for hypertension.

The Commissioner argues that the ALJ properly discounted Dr. Lawus-Scurry's opinion because he found it inconsistent with her treatment notes, which indicated Plaintiff's symptoms were

-7-

alleviated when she followed her prescribed treatment such as her insulin and blood pressure medication. R. 23, 770-79. The Commissioner also argues that the ALJ discussed findings from orthopedist, Ronald Hudanich, D.O., showing only mild osteoarthritic changes of the right knee, with otherwise normal findings. R. 22-23, 528-29.

As further contradiction of Dr. Lawus-Scurry's severely limiting opinion, the Commissioner also points to opinion of the nephrologist, Alfred Rodriguez, M.D., that Plaintiff should begin an exercise program. R. 797. The inconsistencies between Dr. Lawus-Scurry's opinion and the other evidence in the record, the Commissioner argues, support the ALJ's decision to discount her opinion. The Commissioner also argues that Dr. Lawus-Scurry's opinion did not state the conditions on which her opinion was based (R. 799-800) and the notes the ALJ discussed were those most contemporaneous in time to Dr. Lawus-Scurry's May 2011 opinion.. The Commissioner contends the treatment notes do not reveal other abnormal findings suggesting the level of limitations the doctor opined and which were related to impairments other "than hypertension and blood sugar," were being controlled with medication. R. 770-76. The Commissioner argues that the ALJ properly considered the notes most relevant to the time at which Dr. Lawus-Scurry's opinion was given because those notes were logically most relevant to the opinion and showed Plaintiff's conditions were generally under good control with medication.

Plaintiff has had diabetes since 1998 – at the age of 31 – with complications from the disease (R. 506, 514), as well as a history of back problems which eventually led to surgery. In November 2002[3], Plaintiff had surgery to fuse two discs in her back, L5-S1, and a laminectomy at L5 due to a lumbosacral instability at L5-S1 and foraminal stenosis at the same level; she recovered from the surgery and by January 2003 had diminished pain. R. 272, 285. However, Plaintiff's back pain increased over time to the point she required physical therapy in April 2008. R. 487-494. Plaintiff's

---

[3]Plaintiff concedes that, although there is a significant amount of medical records prior to the alleged onset date of disability, only certain evidence from before Plaintiff's alleged onset date (of July 2009) is relevant to her argument.

-8-

diabetes progressed to the point she required an insulin pump (R. 507-08), and by February 2008 her "glycemic control [was] still quite suboptimal with the A1C rising to 13.3." R. 506. By April 2008, Plaintiff had to discontinue the pump after two infections and the fact that she no longer had healthcare coverage. R. 505. The endocrinologist, Dr. Pacheco, noted she also suffered from hypothyroidism due to Hashimoto's, which caused her to gain weight. R. 511-12, 518.

Around the alleged onset date, in July 2009, Plaintiff began seeing Dr. Mason for pain in the arches of her feet which developed when she recently began a job at Wal-Mart working 20 hours per week involving standing; she was having great difficulty completing the four-hour days. R. 696, 715. Dr. Mason's treatment notes report very painful extensor tendinitis, on the right greater than the left with crepitus, and x-rays showed early osteoarthritic changes in the mid tarsal joint and chronic tinea pedis; Plaintiff was advised to continue with anti-inflammatory medications, but no diabetic Charcot was noted at that time. R. 715. In July 2009, Plaintiff complained of pain in her knee after hearing a sudden "pop" followed by pain and swelling. R. 528-29, 689-91. Dr. Hudanich noted mild soft tissue in the right knee with mild medial patella tenderness and concluded that Plaintiff had mild arthritic changes in the right knee, and prescribed Ibuprofen to treat the condition. R. 529, 690.

In September 2009, Plaintiff was seen again by Dr. Mason for lower extremity pain and indicated that she had to stop working because of this pain. R. 713. Dr. Mason noted that Plaintiff had nonpitting bilateral edema and "significant polysensory neuropathy" bilaterally. R. 713. Over the following twelve months between fall of 2009 and 2010, Dr. Mason opined that the claimant was suffering from "severe peripheral sensory neuropathy," Charcot in her right foot, and "quiescent Charcot on the left." R. 712 (October 13, 2009); R. 768 (June 2010). Diabetic Charcot foot arthropathy is one of the most serious foot problems that diabetics face, and it is a result of nerve damage or neuropathy that leads to a loss of sensation in the feet; diabetes also damages blood vessels, which decreases the blood flow to the feet and poor circulation weakens bone, and can cause

disintegration of the bones and joints in the foot and ankle; the combination of bone disintegration and trauma can warp and deform the shape of the foot. *See* American Academy of Orthopaedic Surgeons, http://orthoinfo.aaos.org/topic.cfm?topic=A00655 (visited on February 27, 2014). It is a "potentially limb-threatening disorder that is being recognized with increasing frequency in persons with longstanding diabetes and concomitant peripheral sensory neuropathy." Frykberg & Rogers, "The Diabetic Charcot Foot: A Primer on Conservative and Surgical Management," JOURNAL OF DIABETIC FOOT COMPLICATIONS (available online); *see also* "The Charcot Foot in Diabetes," NATIONAL INSTITUTES OF HEALTH LIBRARY website, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3161273/. Plaintiff testified at the hearing on May 25, 2011, that she has severe arthritis in her feet and legs such that they swell up if she stands too long; she had one disc replaced and two more degenerative discs; when she tries to walk a little distance her whole left side stiffens up on her. R. 39. The pain in her back from the arthritis causes her pain which goes straight down the left side of her body down to her leg and foot. R. 40. Plaintiff also testified that she had severe peripheral sensory neuropathy, or nerve damage, in her feet, legs, arms, and hands; she was losing feeling in her hands due to the peripheral neuropathy. R. 40, 46. Plaintiff has also had issues with swelling in her feet, legs, hands, and whole body at times; arthritis in her right hand also caused swelling at times. R. 43, 45. Plaintiff further testified that her diabetes was not controlled, but went from one extreme to another; she failed to take the medication because she could not always afford it. R. 41. She would opt not to take her insulin at night, but only take it in the morning; she would not be able to take the dose at night because she did not have enough. R. 41.

The ALJ went to great length to describe Plaintiff' noncompliance, even misstating and mischaracterizing some of the evidence, and failed to discuss Plaintiff's inability to afford the insulin medication. The ALJ described Plaintiff's diabetic condition:

> The claimant was diagnosed with diabetes 1998. Since her initial diagnosis, her blood sugar levels remain high and uncontrolled. The claimant testified that she suffers from various ancillary medical problems including diabetic neuropathy with symptoms of blurred vision, numbness in her upper and lower extremities in conjunction with swelling and pain. These symptoms interfere with her ability to walk, and stand for prolonged periods. Additional factors affecting her lower extremities include arthritis in her feet. These conditions combined cause swelling and numbness in her feet and complicate her ability to walk and stand.

R. 20. The ALJ continued in the analysis misstating some of the treatment records, which certainly portrayed Plaintiff in an extremely negative light in terms of noncompliance. The ALJ stated:

> On May 5, 2009, the claimant again complained of lower extremity swelling, in conjunction with headaches. Dr. Lawus-Scurry noted that the claimant was not taking her insulin nor was she taking her cholesterol medication. In addition, Dr. Lawus-Scurry also noted that despite the claimant's complaints of pain, there were no signs of diabetic neuropathy.

R. 21 (citing Ex. 24). Plaintiff was seen on May 5, 2009 but she did not complain of any neuropathy, and she came in at *Dr. Lawus-Scurry's request for evaluation*. R. 547.  The ALJ also cited a record from June 1, 2009, as "the claimant complained of pain and swelling in her knees and ankles. An x-ray of her right knee failed to show a fracture or any abnormalities (Exhibit 24F [R. 545])." R.21.

The ALJ makes it sound as if Plaintiff had no objective evidence of knee pain. However, there were other objective symptoms noted by Dr. Lawus-Scurry: "Extremities show a swelling around the lateral malleolus in the right lower extremity, pain on flexion and extension." R. 545. The physician prescribed medications for pain and swelling, advised keeping it elevated and excused Plaintiff from work for a week. R. 545.

The ALJ described the next treatment record from September 30, 2009 as: "[T]he claimant again complained of swelling and pain in her lower extremities. The claimant admitted that she was not taking her insulin nor was she monitoring her blood sugars (Exhibit 24F)." R. 21. Plaintiff saw Dr. Lawus-Scurry at that appointment because she was applying for a teaching job and needed paperwork completed, and she did *not* complain of pain in her extremities at all. R. 540. The physician stated in the Assessment/Plan section that Plaintiff's diabetes was "very poorly controlled

-11-

due to noncompliance" and she discussed in detail with Plaintiff that she was urged "to take her insulin at night." R. 540. The ALJ describes another instance of "noncompliance" as:

> On January 1, 2010, the claimant complained of swelling in her lower extremities, fatigue and headaches. Dr. Lawus-Scurry stated that the claimant's blood sugars and blood pressure were high and that these symptoms were associated with uncontrolled high blood pressure, sleep apnea, and uncontrolled diabetes. Consequently, Dr. Lawus-Scurry again noted that the claimant was not complying with her prescribed treatment plan (Exhibit 31F).

R. 21. The Court cannot locate such notes in the Record. The ALJ's citation is to Exhibit 31F which is from a different doctor at a different practice (Pulmonary Records from Dr. Feibleman) for different dates that do not discuss any of the items cited by the ALJ. R. 786. The ALJ then draws the following conclusion:

> Subsequent treatment records show that the claimant's symptoms subsided with compliance with her prescribed treatment protocol. On October 23, 2010, Dr. Lawus-Scurry stated that the claimant's headaches were resolving because she was taking her insulin at night and was compliant with her blood pressure medication.

R. 21 (citing Exhibit 30). The ALJ again mischaracterizes the records to portray Plaintiff in the most negative light as repeatedly noncompliant. In actuality, the record from October 22 [not 23], 2010 discusses Plaintiff's accidental over medicating with 90 units of Levmir instead of 30, which may have caused her to have a severe headache and elevated blood pressure the following day from hypoglycemia, according to Dr. Lawus-Scurry. R. 779. While it is true that Plaintiff admitted to not taking her insulin dose *at night* and not taking her cholesterol medicine, she stated to the doctor (and at the hearing with the ALJ) that she did not take all of her medication because she could not afford it. R. 547. The ALJ erred in failing to discuss Plaintiff's inability to afford her medications as a reason for her noncompliance, despite clear Eleventh Circuit case law requiring him to address the issue.

The regulations provide that refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. *See* 20 C.F.R. § 416.930(b). "A medical condition that

can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987)). In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored; this finding must be supported by substantial evidence. *Dawkins,* 848 F.2d at 1213 (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)). "The burden of producing evidence concerning unjustified non-compliance is on the [Commissioner]." *Id*. The Eleventh Circuit held in *Dawkins*, that, while a remediable or controllable medical condition is generally not disabling, when a claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law. 848 F.2d at 1213-14 (holding plaintiff's explanation that she was non-compliant with treatment for her disabling condition because of poverty, or inability to afford the surgery her doctor recommended, rendered her disabled).

Here, Plaintiff repeatedly raised her inability to afford treatment and medications and pointed this out at the hearing, but the ALJ failed to address it in his decision. *Cf. McCarty v. Colvin*, 2013 WL 1335634 (S.D. Ala. March 29, 2013) (remanding where the ALJ's decision failed to discuss the plaintiff's ability to afford medication and whether any such poverty excused noncompliance). As such the ALJ's decision was not based on substantial evidence.

The ALJ continued his analysis as follows:

On February 28, 2011, Dr. Lawus-Scurry noted that the claimant's blood pressure readings were better. On March 14, 2011, Dr. Lawus-Scurry stated that the claimant's blood pressure was well controlled with medication and that she was feeling better. Finally, on April 12, 2011, the doctor noted that the claimant's blood pressure was under excellent control and her swelling in her lower extremities was minimal (Exhibit 30F).

The claimant's noncompliance with her prescribed treatment plan is also well documented by Podiatric physician, Dr. Christopher Mason. Dr. Mason treated the claimant from 2006 to 2010 for foot swelling and pain. Dr. Mason noted on October 13, 2009, that the claimant presented to Dr. Mason with complaints of foot swelling and pain. However, Dr. Mason noted that the claimant had only mild swelling in her

-13-

>feet. Dr. Mason also stated that the claimant was not monitoring her blood sugar levels. On June 10, 2010, the claimant again presented to Dr. Mason with complaints of foot swelling and pain, however, Dr. Mason again noted that the claimant was not monitoring her blood sugar levels. On June 17, 2010, Dr. Mason treated the claimant for an ingrown toenail and mild swelling in her feet. Dr. Mason stated that despite her complaints of pain, the claimant had non-pitting edema in her feet with no signs of infection (Exhibit 29F).

R. 21-22.

Although the ALJ *noted* that Plaintiff had received treatment for various impairments, he did not include Plaintiff's condition of "severe peripheral neuropathy" or Charcot foot problems as severe impairments. Instead, the ALJ focused on Plaintiff's blood pressure problems and swelling, which might have exacerbated Plaintiff's neuropathy, but did not cause it – Plaintiff's diabetes caused it. In fact, Dr. Mason noted when Plaintiff was having severe pain in her right lower extremity in June 2010 that she had severe peripheral sensory neuropathy and early Charcot in the mid tarsal joint, which he treated with non-weightbearing and walker immobilization, but she was to follow up separately with Dr. Lawus-Scurry for management of her lower extremity swelling. R. 769. In September 2010, Dr. Mason recommended a bone scan but Plaintiff did not have insurance and did not feel she could afford it. R. 767. Dr. Tim Mason saw her later that month and was concerned about the possibility of Charcot in her left foot as well. R. 766. In January 2010, Plaintiff also complained of a tingling sensation in her left elbow and hand, as noted by Dr. Lawus-Scurry associated with her "very poorly controlled" diabetes. R. 786.

While there certainly are records of Plaintiff hypertension coming under better control – though she suffers from Stage III chronic kidney disease (R. 796-97[4]) – there are no records that report Plaintiff's "blood sugar" was "controlled with medications" as the Commissioner suggests. Within the range of pages cited by the Commissioner that have any reference to "blood sugar," a single page actually states that Dr. Lawus-Scurry noted on March 10, 2011 (just two months before

---

[4]The nephrologist, Dr. Rodriguez, opined that Plaintiff would have further issues with uncontrolled diabetes and hypertension which would ultimately lead to underlying kidney failure. R. 797.

-14-

the hearing) that Plaintiff's "blood pressure is still markedly elevated" and "her sugars have been dipping down low in midday." R. 774.  None of the physician's records cited by the ALJ or the Commissioner describe Plaintiff's diabetes or blood glucose levels as being "under control."

Generally, a long-term diabetic suffering from neuropathy is referred to neurologist for treatment and this specialist is able to objectively confirm the level of the patient's impairment with a nerve conduction test; no such referral or testing was done here, most likely because Plaintiff's neuropathy was in her feet, so she was only referred to Dr. Mason, a podiatrist, who was not capable of adequately assessing Plaintiff's neurological impairment. On remand, the ALJ should request a consultative examination with a neurologist or a specialist capable of assessing Plaintiff's neuropathy.

In summary, the ALJ erred by failing to recognize Plaintiff's peripheral neuropathy, including specifically her Charcot foot problems, as a severe impairment and include limitations from these impairments, particularly related to sitting and walking, as expressed in Dr. Lawus-Scurry's RFC opinion. R. 799-800. In addition, the ALJ failed to adequately discuss, in the context of Plaintiff's noncompliance, her inability to afford her insulin and other medications, as he is required to do under the regulations and Eleventh Circuit case law. The ALJ compounded the error by significantly mischaracterizing the records of noncompliance or citing records not in the Record at all. Accordingly, the ALJ's decision was not based on substantial evidence and the ALJ's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

### B.     Hypothetical to the VE

Plaintiff argues that the ALJ erred in relying on the testimony of the Vocational Expert after posing a hypothetical question that did not adequately reflect all of her limitations. Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with

the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The ALJ posed the following:

So taking that into consideration, with the claimant's age and past work experience and body habitus, do you have an opinion as to any unskilled jobs at the sedentary level?

R. 52. The VE answered by opining that the hypothetical person could not perform past relevant work, but could perform the jobs of charge account clerk; document preparer; and an order clerk, food and beverage could be performed. R. 52.

For the reasons stated above, the ALJ's failure to accurately account for Plaintiff's peripheral neuropathy and Charcot foot in Plaintiff's RFC was error. Moreover, it was error for the ALJ not to accurately account for Plaintiff's peripheral polyneuropathy and Charcot foot in the hypothetical question to the VE. On remand, the ALJ will accurately account for Plaintiff's peripheral polyneuropathy and Charcot foot, as appropriate, in the hypothetical question to the VE.

## IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record